**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| STEVEN ANDREW HIGGINS,<br><br>Plaintiff,<br><br>      v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>      Defendant. | No. 17-cv-12151-DLC |

**ORDER ON DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

CABELL, U.S.M.J.

  Plaintiff Steven Higgins applied for several positions at defendant John Hancock Life Insurance Company (John Hancock) but failed to receive an interview for any of them.[1] He contends it was because of his age and asserts claims for discrimination under M.G.L. c. 151B, § 4(1B) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623. The defendant moves for summary judgment; the plaintiff opposes the motion. (D. 43, 50). For the reasons discussed below, the motion will be granted.

---

[1] Higgins applied for several positions but only three are at issue here, those being positions for (1) Senior Auditor-Global Compliance (Global); (2) Senior Auditor, U.S. Wealth (Wealth); and (3) Audit Manager. (D. 50; Plaintiff's Opposition to Defendant John Hancock Life Insurance (USA) Company's Motion for Summary Judgment to Dismiss (Pltf. SOF), p. 2).

**I.    RELEVANT FACTS**

   *A. The Plaintiff's Work Experience*

In 2015, Higgins was 63 years old, with 43 years' experience in finance, accounting, and audit work. (Pltf. SOF p. 3). He holds a bachelor's degree in accounting *cum laude*, and an M.B.A. in finance from Suffolk University. He is also a certified internal auditor (CIA) and certified fraud examiner (CFE). (Id. Exh. 1, p. 23).

From 1981-1991, he served in several capacities with the Millipore Corporation, a life sciences company. His roles included senior corporate auditor and manager of worldwide financial reporting. (Id. Exh. 1, p. 26).

Thereafter, he worked for approximately 12 years for the Massachusetts Department of Revenue, serving as a senior internal audit manager for over seven years; a manager of special projects for approximately two-and-a-half years; and a manager of account reconciliations for another two-and-a-half years. In these positions, he planned, organized, and conducted various audits; reconciled accounts; resolved overbilling and billing error issues; and developed and implemented procedures for approximately 100 employees. (Id. Exh. 1, pp. 25-26).

From 2004-2009, the plaintiff served primarily in contract positions as Chief Financial Officer of Quincy College (September

2

2004-June 2007) and Financial Consultant with the Federal Reserve Bank of Boston (December 2008-April 2009). From December 2007 to October 2008, he also served as Assistant Vice President—Internal Audit for CitiStreet, an employed position. (Id. Exh. 1, pp. 24-25).

While with Quincy College, he addressed unethical budgeting practices, improved reconciliation and reporting standards, and designed and implemented an improved annual budgeting process. (Id. Exh. 1, p. 25). At CitiStreet, he conducted operational, financial, compliance, and money laundering audits and ensured staff compliance with corporate policies and procedures. (Id. Exh. 1, p. 24).

With the Federal Reserve, he oversaw a five-month project to review a multi-billion-dollar government program with accounting inconsistencies. According to his supervisor at the Federal Reserve, he "exemplified great leadership, communication and organization skills" and exhibited great determination to complete the project on time. (Id. Exh. 1, p. 27).

From 2009-2014, the plaintiff worked as an advisor/broker through a business he incorporated. (D. 45-2; Deposition of Steven A. Higgins (Higgins Depo.), p. 37 l. 20 – p. 38 l. 24). However, although the plaintiff had over 5,000 inquiries for financing, he

did not close a single financing deal. (Id. p. 42 l. 4 – p. 43 l. 20).

### B. John Hancock's Hiring Approach

John Hancock posts job opportunities both internally and externally but it looks favorably upon internal employees for advancement. (D. 45; Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment (Def. SOF) ¶¶ 3, 5). It also focuses on recent experience and technical skills such as computer and software programming proficiency. (Id. ¶ 8). It evaluates the suitability of job candidates by assessing their current relevant work experience and comparing it to the job qualifications. (Id. ¶ 7).

### C. The Three Positions at Issue

From 2007 to 2015 the plaintiff applied for 49 different positions at John Hancock but did not receive an interview for any of them. Three of them are at issue here.

#### 1. Global Compliance Auditor

The Global Auditor is responsible for completing audits focused on risks and delivering "high quality, professional, cost-effective, [and] value-added" services. (Id. Exh. 6). Specifically, this job called for the following knowledge, skills, competencies, and education:

(a) Willingness to obtain in-depth and current knowledge of financial institutions, particularly life insurance, and compliance functions;
(b) Demonstrated understanding of business processes and associated risks, with ability to analyze situations, reach appropriate conclusions, and make value-added and practical recommendations;
(c) Demonstrated knowledge of auditing, project management, and risk management practices, along with knowledge of regulations and specifically, anti-money laundering;
(d) Ability to effectively communicate ideas and recommendations orally and in writing, and to listen and consider ideas of others;
(e) Strong customer focus and commitment to quality;
(f) Ability to develop and carry out audit programs to deliver quality results on time and within budget;
(g) Ability to exercise and demonstrate sound judgment;
(h) Results-oriented focus and ability to balance multiple priorities and projects;
(i) Proven relationship skills including a demonstrated ability to deal effectively with business units and staff at all levels;
(j) Leadership skills in achieving departmental, project and individual objectives;
(k) Ability to manage goals in situations without formal structure and to adapt to change;
(l) University degree required;
(m) A recognized accounting (CPA, CA, CMA, CGA), auditing (CIA), fraud (CFE), and/or anti-money laundering specialist (CAMS) designation desirable; and
(n) Three to four years of internal/external audit or equivalent business experience. (Id.).

The person John Hancock selected to fill this position was a woman who had served in a similar position with Santander Bank for almost the previous three years. Prior to Santander she had worked for three and a half years for KPMG LLP, a major accounting firm. She held a bachelor's degree in business administration and was a

certified regulatory compliance manager.  (Id. ¶ 23; Pltf. SOF Exh. 1, p. 62).

### 2. Wealth Auditor

The Wealth Auditor position called for similar qualifications with the following caveats:

(a) It required in-depth knowledge of financial institutions;
(b) It identified knowledge of wealth management operations as desirable;
(c) It listed a recognized accounting (CPA, CA, CMA, CGA) or auditing (CIA, CISA) designation as desirable; and
(d) It required three to five years of internal/external audit or equivalent business experience. (Id.).

The individual selected for this position was a former John Hancock employee who had previously held the position for a year before leaving to spend approximately four years with McGladrey, LLP. (Def. SOF ¶ 27; Pltf. SOF Exh. 1, p. 58). During his prior tenure with John Hancock, he consistently met and exceeded expectations and produced high-quality work. He received a bachelor's degree in psychology as well as a master's degree in accounting. (Def. SOF ¶ 27).

### 3. Audit Manager

The Audit Manager position also called for similar qualifications with the following caveats:

(a) It required excellent working knowledge of financial institutions and excellent knowledge of audit methodologies;

6

      (b)   It required proven relationship skills including the ability to deal effectively with Assistant Vice Presidents; and
      (c)   It did not list a CIA as required or desirable. (Id.).

The position was filled by an internal candidate who was already employed at John Hancock as a senior auditor, where he worked to develop controls and refine processes relating to certain financial statement risks. He also developed new audit programs when new software was introduced for reporting bases. Prior to his time at John Hancock he had worked at Pricewaterhouse Coopers LLC. He had a bachelor's degree in business management and a master's degree in accounting. (Id. ¶ 32; Exh. 16).

Based on their college graduation dates, Higgins estimates that the successful applicants were born in or about 1986.

**II.   PROCEDURAL HISTORY**

In November 2015 the plaintiff filed an age discrimination charge against the defendant with the Massachusetts Commission Against Discrimination (MCAD). (Id. Exh. 4). In April 2017 the MCAD dismissed the complaint following an investigation. The MCAD found that the plaintiff's lack of recent, relevant experience was a legitimate, nondiscriminatory reason for John Hancock's decision not to consider him, and found further that he had failed to present any evidence that John Hancock's conduct was pretextual. (Id. Exh. 10).

## III. ANALYSIS

### A. *Standard for Summary Judgment*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "assert[ing] the absence of a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).

Once the moving party meets that burden, the opposing party must in order to avoid summary judgment "'show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation.'" *Fontánez-Nuñéz v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (quoting *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005)). Instead, the opposing party must "'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'" *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (quoting *Triangle Trading Co. v. Robroy Indus. Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).

When determining whether summary judgment is appropriate, "a court must view the record in the light most favorable to the

nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (citing *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)).  "A factual issue is genuine if it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make a choice between the parties' different versions of the truth at trial." *DePoutout v. Raffaelly,* 424 F.3d 112, 117 (1st Cir. 2005). Material facts are those that can sway the outcome of the litigation. *Id.*

### *B. Procedural Framework*

Under both the ADEA and Massachusetts law, age discrimination claims track the three-step paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  The plaintiff must first establish a *prima facie* case of discrimination by showing that he was over age 40, he applied for and was qualified for the relevant position, that despite his qualifications he was rejected, and that after his rejection, the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *Summers v. Harvard Univ.*, 397 F. Supp.2d 166, 172 (D. Mass. 2005).  Under Masssachusetts law, the plaintiff must also show that a person with similar or inferior qualifications was hired and that the person was at least five years younger than

the plaintiff.  *Somers v. Converged Access, Inc.*, 454 Mass. 582, 595 (2009).

If a *prima facie* case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the hiring decision.  *Id.*  "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the [plaintiff's] at all times."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991) (citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir. 1990)).

If the defendant is able to proffer a legitimate, nondiscriminatory reason for the adverse employment action, the presumption of age discrimination dissipates and the burden shifts back to the plaintiff "to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination."  *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993).  Under federal law, "[i]t is not enough for the plaintiff simply to cast doubt on the employer's justification."  *Biggins v. Hazen Paper Co.*, 899 F. Supp. 809, 819 (D. Mass. 1995).  Instead, "the plaintiff must present a sufficient showing that a discriminatory animus motivated the action."  *Id.*

However, under Massachusetts law, a plaintiff need only raise doubt that the proffered reason for the hiring decision is not true, without having to show that the real reason for an adverse action was discriminatory. *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 26 (1st Cir. 1998); *Wheelock College v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 138 (1976)).

At the summary judgment stage, the *McDonnell Douglas* framework operates as follows: If the plaintiff fails to establish a prima facie case of discrimination, the employer's motion for summary judgment is granted. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (D. Mass. 1991). If the plaintiff has made out a *prima facie* case and the employer has not offered a legitimate, nondiscriminatory justification for the adverse employment action, the employer's motion for summary judgment is denied. *Id*. At the third step, "the *McDonnell Douglas* framework falls by the wayside," and "the ultimate question becomes whether, on all the evidence of record, a rational factfinder could conclude that [age] was a determining factor in the employer's decision." *Id*. at 824-25.

Applying the framework here, the court finds that the plaintiff has established a *prima facie* case of discrimination but John Hancock has articulated legitimate non-discriminatory reasons for selecting other applicants and the record fails to support a claim that those reasons were pretextual.

### *C. Discussion*

#### 1. <u>*Prima Facie* Case</u>

To begin, there is no serious dispute that the plaintiff has established a *prima facie* case of age discrimination under both federal and Massachusetts law, for all three positions. He is over 40; he applied for the positions; he ostensibly was qualified for each -- John Hancock does not really dispute the proposition for purposes of its motion; and the positions were (presumably) filled by persons at least five years younger than he. (D. 44; Memorandum in Support of Defendant's Motion for Summary Judgment (Def. Mem.), p. 15).

#### 2. <u>Legitimate, Nondiscriminatory Reason</u>

John Hancock counters that each of the successful applicants had more recent relevant experience than the plaintiff had. Where a discrimination claim is based on a failure to hire, courts recognize that "an employer can hire one employee instead of another for any reason, fair or unfair, without running afoul of the anti-discrimination laws as long as the employer's stated reason is not pretextual and its choice is not driven by . . . [a] protected characteristic." *Hawkins v. Mary Hitchcock Mem. Hosp.*, 22 F. App'x 21, 22 (1st Cir. 2001). A person's current, relevant experience is a legitimate, nondiscriminatory reason for a hiring decision. *See Clifford,* 449 F.3d at 282 (in disability

discrimination claim, employer's consideration of current knowledge and experience could not be seen as constituting an attempt to disguise discrimination); *Hutchinson v. Secretary, Dep't of Veterans Affairs*, 766 F. App'x 883, 888 (11th Cir. 2019) (more current and relevant experience are both legitimate reasons for a hiring decision).

Further, John Hancock had a policy that favored advancement of its own employees and the record reflects that one of the positions was filled by a current John Hancock employee and a second was filled by a former employee who had been highly regarded in his previous stint with John Hancock. Favoring existing employees or persons with whom an employer has had a positive work experience is also a legitimate, nondiscriminatory reason for a hiring choice. *See, e.g., Idlisan v. Mount Sinai Med. Ctr.*, No. 12-cv-8935 (PAC)(RLE), 2015 WL 136012, at *13 (S.D.N.Y. Jan. 5, 2015) (preference for filling vacancies from within is legitimate and non-discriminary); *Aguilar v. Salazar*, 626 F. Supp.2d 36, 40-41 (D. D.C. 2009)(Department of Interior did not run afoul of Title VII by interviewing only candidates with prior National Park Service experience).

Accordingly, John Hancock has articulated legitimate, nondiscriminatory reasons for choosing the selected individuals over the plaintiff for the three jobs in question.

### 3. Pretext

The burden thus shifts back to the plaintiff to show that the defendant's proffered reasons are a pretext for age discrimination. In order to meet his burden, the plaintiff "must demonstrate either that the defendant's failure to select him was (1) 'more likely motivated' by discrimination than by the explanation proffered by the defendant; or (2) 'the proffered explanation [was] unworthy of credence' where the suspect action, coupled with evidence to the contrary, suggests a discriminatory motivation." *Aly v. Mohegan Council, Boy Scouts of America*, 711 F.3d 34, 46 (1st Cir. 2013)(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, (1981)) (punctuation in original). The plaintiff advances four arguments in support of a claim of pretext but none ultimately persuades.

First, the plaintiff urges the court to consider that, based on his calculations, the percentage of John Hancock's hires in 2015 who were 55 or older was 5.48%, a dramatically smaller figure than the percentage of Massachusetts residents who were 55 or older in 2015, 29%. Presumably, the plaintiff does not argue that a company is obliged to hire a workforce that matches the demographics of the population at large, because it is not, but rather argues that evidence of such a large disparity is probative of John Hancock's mindset.

The court rejects the argument as it is presented here because there simply is no basis to glean evidence of age-based animus from these statistics, even assuming they are correct. For one, focusing on John Hancock's hires for a particular year says nothing about whether John Hancock's overall workforce nonetheless aligned with the demographics of the general population. Moreover, because a company might have a disproportinate number of positions calling for specific abilities such as the capacity to perform heavy physical labor, or work with complex or modern technologies or work systems, the composition of a company's workforce might legitimately differ from that of the population at large. In any event, the more relevant comparison here would be between the number of applicants over 40 who were qualified versus the number of applicants over 40 who were chosen, a metric for which the plaintiff offers no evidence. *See, e.g., Whitacre v. Davey*, 890 F.2d 1168, 1172 (D.C. Cir. 1989) (in *Bivens* action, court observed that even if Title VII's evidentiary standards applied, it still would be unable to assess whether the percentage of hires over age 40 was disproportionate because plaintiff provided no evidence on the pool of available and qualified applicants).

Second, the plaintiff contends that he was better qualified than the individuals hired, particularly for the Wealth and Global positions. In this regard, he notes that neither successful

15

candidate had CIA certification, and both had insufficient auditing experience when compared to the respective job listing's requirements. (Pltf. SOF Exh. 1, pp. 58-64). This argument has no merit. First, even accepting that the plaintiff satisfied the requirements for the positions at issue, there is no evidence that he has worked in the field of auditing since 2009 and each of the successful candidates by contrast had more current work experience. Further, although an accounting or auditing certification was "desirable," it was not required and could be offset by "equivalent" experience. *See Waris v. Heartland Home Healthcare Servs., Inc.*, 365 F. App'x 402, 405 (3d Cir. 2010) (no pretext where plaintiff had more work experience than hired person, but the hired person's relevant experience was more current). Further still, even assuming one could debate whether the plaintiff's qualifications made him a competitive or even superior candidate, it would not benefit the plaintiff here because courts "'may not sit as super personnel departments, assessing the merits— or even the rationality—of employer's nondiscriminatory business decisions.'" *Heard v. Commonwealth*, Civ. A. No. 02-12498-DPW, 2003 WL 21960726, at *6 (D. Mass. Aug. 11, 2003) (quoting *Mesnick*, 950 F.2d at 825) (fact that plaintiff was somewhat better qualified than person hired has minimal value as evidence of age discrimination).

Third, the plaintiff argues that pretext may be inferred from the fact that four age discrimination suits were filed against John Hancock between September 2015 and November 2017. (Pltf. SOF Exh. 1, pp. 45-46). This argument fails because the existence of a lawsuit is not evidence of actual age discrimination. *Cf. Jackson v. Federal Express*, No. CV 10-01760 MMM, 2011 WL 13268074, at *2 (C.D. Cal. June 13, 2011)(prior discrimination lawsuits relevant only if clear nexus exists between them and current case).

Finally, the plaintiff alleges that John Hancock deliberately concealed evidence from him, suggesting perhaps there is somewhere probative evidence of age discrimination. Nothing in the record supports this claim, however. The plaintiff finds it suspicious that John Hancock was not able to identify the person who actually reviewed his applications (Pltf. SOF, p. 17), but the record reflects that John Hancock's Boston office in 2015 used 38 staff members to review over 19,000 applications. (Def. SOF Exh. F). Lisa Ryan, the Vice President of Recruiting and Learning Service Delivery in 2015, testified that the company reviews 100 percent of its applications, although some resumes are not reviewed based on pre-screening questions. (Id.). The defendant's inability to identify the plaintiff's screener is neither surprising nor unreasonable against this backdrop.

17

**IV. CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment (D. 43) is **GRANTED.**

<u>**SO ORDERED**</u>**.**                                              <u>/s/ Donald L. Cabell</u>
                                                              DONALD L. CABELL, U.S.M.J.

DATED:   September 19, 2019